Mr. McNamara, good afternoon. You're welcome. Please proceed. This is the stormwater runoff retentions case. The appellants are here seeking relief in connection with the denial of a motion for preliminary injunction. We're seeking two things. The first, the issuance of a claim construction ruling which vacates the district court's claim construction and instructs the court... Well, I don't see that we hardly have a district court claim construction. There's certainly no articulation of it anywhere that I can find. Your Honor, that is regrettable. I believe, however, that the appellees have suggested that we should just adopt their claim construction ruling which was what the court indicated it was going to do. How do we know what that is? Where is that article? Well, the appellees have proposed their marking brief and the hearing. They have also submitted a proposed conclusions of law which we'd be willing to accept as the evidence of what the court ruled. Is that in the appendix? I don't believe it's in the appendix now. Then it's not before us. It's docket number 175, but it's not in the appendix. Let me ask you a question about timing of this case. There's a suggestion that there was a very long period between the filing of the request for preliminary injunction and the ultimate disposition. Was that pursuant to some kind of agreement of the parties to postpone action? Or were you just sitting around checking a bit, waiting to get a ruling and its ruling didn't come two and a half years later? There was no agreement between the parties. This was purely the district court's... Well, let me ask the question perhaps in a broader sense. Was there any explanation other than just the district court's docket questions or whatever that would tell us why there was close to three years? Is that right? That is correct, Your Honor. It was the district court's inability to get to this for whatever reason, and both parties would periodically call chambers, ask if we might get a ruling sometime, and time would pass and we would call again. It took three years. And what you're looking to us for, at least in part, is for us to send it back to the district court for a more plenary explanation of, at minimum, the denial of perhaps reconsideration of the question of whether there was a non-plenary injunction. To be candid, I think I would prefer if this court would address the issue of claim construction because... You want us to treat this as if it were a summary judgment grant of non-impringement based on claim construction? I think both parties would appreciate the certainty that it would come from a ruling. You know, there is no certainty that we'll get a written decision any time within another three years. Let me ask one other question, if I may, while we're on this sort of procedural issue. There's a suggestion at the end of the Appellate 3 that this request for injunctive relief, now at least, perhaps earlier, is moved because of the absence of any continuing possibility of, possibly continuing infringement under any claim construction by the old devices. Maybe I've misstated the position, but is this issue of injunctive relief moved, and if not, why not? I do not know whether or not they have actually discontinued selling the devices that were accused of infringement. Those are these old 30-50 chambers. They have a new product called the New Chambers, which are not an issue of this litigation. We've never included them in our counterclaim. They were not the subject matter of the declaratory judgment complaint. There's never been any communication applying that those were infringing those new products. So, we're only talking about these old 30-50 products. Are they still being sold? I don't know. Well, is there any indication they're still being sold? As of the preliminary injunction hearing, the statement, the testimony was they had inventory of these, and they were continuing to sell them. Now, that was two and a half years ago. I don't know what the current status is. And there was no specificness to the size of the inventory? I believe it was on the order of $25,000, but I don't recall specifically. $25,000? Yes. Of the product? Yes. In any event, we have before us a situation where we don't know quite what the decision is, but I think both parties would love to get a discord to give some consideration with the claim construction committee. Well, that asked us to do it in the first instance with an entirely irregular and in a preliminary injunction setting in which we are instructed by our positions not to give a conclusive claim construction. So it becomes part of the law of the case, Your Honor. Actually not. Oddly enough, the Supreme Court has said that a ruling on a preliminary injunction is not law of the case, so it wouldn't be law. And as Judge Bryson points out, we repeatedly said that if we even review a full claim construction for purposes of the injunction by the district court, we only review it in a very indirect and non-binding sense. And we have cases where on the merits, on summary judgment or after trial, we've in a sense reversed ourselves, changed our mind about the construction. So it seems that you're not eligible to get what you'd like. In this particular case, the parties had reached a stipulation that the preliminary injunction hearing was essentially a marking hearing, a preliminary injunction hearing, that the claim construction that the court would adopt in connection with the preliminary injunction motion would be the final claim construction that would apply throughout the case. And in fact, at this point in time, there below, they had filed a motion for summary judgment, which is in that maybe state, although we haven't had a ruling on that either, which basically is based on the claim construction that was apparently adopted in the denial of the motion for preliminary injunction. So if it makes any difference, we may be back here on assuming that we have the same issue presented on the grant of summary judgment of non-infringement. But in any event, the parties had expected that this hearing, whether marking briefs, have a testimony taken with regard to claim interpretation, and then as to infringement, would provide an ample basis for a decision as to what the claim ought to be. Is the summary judgment motion based on the same grounds that you're briefing and arguing for us now? Yes. That's the appellee's motion, yes. Are they pending now? Yes. In the district court? Fully briefed, fully developed summary judgment papers? They've only so far been briefed by the appellees on a motion for summary judgment. We have not briefed them during the pendency of this appeal awaiting this proceeding. Awaiting our claim construction. So the district court can go ahead and try the case, or in other words, disclose the case based on our claim construction. Correct, Your Honor. Instead of referring the case to a magistrate, you've had the case referred to us for claim construction. In the first instance. In this case, we have waited a long time. I understand that it's a difficult situation to be in. I'm not entirely concerned. It's pathetic, but it puts us in a strange position where we have really very little guidance from the district court. We're supposed to be doing something in the interest of the review, and instead we're really looking at something virtually in the first instance. It's unusual. Both parties presented quite a bit of briefing, proposed findings of fact. There was lots of testimony, briefs, plenty of stuff to work with, but the court made its decision as it did. Let me ask you this, going to the merits. Looking at Claim 11, and the language in particular that appears near the end of B3 of Claim 11, it says first and second action systems further, including means to prevent lateral spreading of first terminal gallery. Why is that not a means of obstruction of language? In the sense that this seems to, in the guidance of the Phillips v. A. W. H. case, this seems to provide us a structure that says means to prevent lateral spreading, including said first end wall inhibiting lateral spreading of said first gallery. Said first end wall is a very defined piece of structure in the patent application. We know there's a piece of said means. Is this specific structure as defined here? Well, keep in mind, in Phillips, what the question was, the means plus function issue is whether the word baffle was itself means plus function blank. The way you would say the word break. Does it contain within itself merely a general description of a function, or is it actually a description of structure? And we decided it's a description of structure, not a function. Here, it seems to me the question is whether this is a means plus function claim in which you have described one element of the structure in the claim, but left for the specification the rest of the structure, as in means for hanging a picture on the wall, including a nail. But then the other means also is a piece of wire and hooks. That would be means plus function, would it not? It would be. Right. And why isn't that this? Because if you look at the claims overall, there are different claims with different structures that are defined. And let me just put a note that this patent application started out with one concept, which was overlapping elements in figures 10 and 11, which are sort of lower transfer openings that overlap. And then the inventor realized that maybe he would want to do something a little different with the overlapping rib designs. The club chambers themselves would overlap. So you have a couple of different embodiments that were presented in these things. Yeah, but I'm focusing on claim 11. I understand claim 16, for example, has a somewhat different language. But that language in claim 11, which you say is not means plus function, I'm just trying to see why not. Because if one looked at, for example, claim 15, which is very similar to claim 11 as having two different galleries that are connected together. But if you look at the end of claim 15, it's in column 12, lines 7 or 8 there. And it says that including means to prevent spreading of said adjoining first and second galleries once latched to one another, including at least one lug on a lower terminal portion of said first body adapted to engage a cutout portion. So these two claims are essentially identical. But in this claim 15, the means for preventing spreading is defined specifically as the lug. No, that's not right. So part of it may be a structure claim. That's the part about end of wall or lug. But the rest of it is only alluded to without the slightest indication of what the structure would be. So the only conclusion I can see that's reasonable in that circumstance is that the rest of the latching mechanism would have to be found under the 1.12.6 analysis in the written description. In the Philips versus AWH case, the claim read means for increasing load capacity comprising internal steel baffles. In this case, it says means to prevent lateral spreading, including said first end wall inhibiting lateral spreading. So it says that at least one of the means has to include the end wall. I think that's clear. And it may optionally include additional elements, but it doesn't require these additional elements, which is what the Appelese argument is. It says this is a means plus function claim that requires an end wall, plus lugs, plus notches, plus step support walls, plus other sidewalls. And I don't think there's any law that says when you interpret a means plus function clause that you have to import into that means plus function clause every single item which serves that particular function, which is what the Appelese argument is and which is what the district court apparently decided. You're wrong, but that doesn't necessarily mean that you're right, that in no respect are the two disputed claims analyzable under 1.12.6. They may have two on the laundry list of mechanisms, but yours is too short. What's the function here? Is it lateral or longitudinal spreading? In other words, are we talking about the thing squatting out, or are we talking about the two ends separating from each other? The pressure from above forces it to splay out, correct? That is correct. As opposed to longitudinal where it stretches out along the length of the gap. That is correct. Which are we talking about? We're talking about the lateral spreading. Repeatedly, the examiner seems to have concluded that the law itself isn't sufficient to establish a patentable invention with respect to lateral spreading. So that's why I thought that the prosecuting attorney came up with language which incorporated more than just the law, but what you now seem to be saying is, with respect to both 11 and 16, that the law is enough. Why doesn't that fly in the face of what the examiner repeatedly said was not patentable subject matter? You know the sections I'm talking about where the examiner said that. Yes, the examiner didn't make those rejections, and yet I look at these claims that – like I'm looking at this claim where it says means for preventing spreading is lugs, and means for preventing spreading includes an end law, and I interpret that as meaning that the examiner changed his mind somewhere along the way. Well, there are two inferences one could draw. Either the examiner changed his mind, or the language should be read as not limited to, or at least not amenable to limitation to just including the law. Now between those two, since the examiner certainly didn't say that he changed his mind, and he reiterated these rejections right up until the end, until the last change was made, it seems to me the examiner changed his mind hypothesis seems less likely. Doesn't it to you? I think it doesn't become less likely because you have to look at all the claims as a person of ordinary skill in the art and say to yourself, well, what does that person think these mean? And to the extent that the examiner may have rejected things a number of times previously, does that trump what the ordinary meaning of the language conveys? I thought you were arguing not that the end law was enough, but that it was the end law plus the ribs. Thank you. That's an excellent point in the sense that the end law plus the overlapping ribs themselves provide a structure that supports the outlaw so that it prevents spreading. Well, then how do we get the ribs in there? There's no reference to ribs in terms of structure language in either Claim 11 or Claim 16. So if it doesn't come in via 1, 12, 6, how does it come in? That would be the means plus function is presumably interpreting it if we interpret this as a means plus function. So wait a minute. Now you're saying it is a means plus function and ought to bring in the ribs, but you don't bring in the rest of the structure? I think you'd get to the same result whether you treat it as non-means plus function or as a means plus function. But if you treat it as non-means plus function and the validity until none of this happens, it turns on whether the wall itself has sufficient validity, right? Despite the prosecution history that Judge Bryson pointed out. Yes. Do you really want to go down that road? That the validity depends on the wall? Yes. That's quite right. All right. We'll give you a little bit of rebuttal time back. Mr. Rye. Good afternoon. Good afternoon, Your Honor. Obviously there are a number of issues. Does your claim construction require that to infringe, the gallery would have to have the support members in that staircase profile? Well, I do believe that that's what's stated as part of the structure that provides the lateral support in the spec. And so that it would have. No, no. But what I'm asking you is, are you saying that to infringe under both claims, the latching structures would have to include that configuration shown in figures 14 and 16? Yes, Your Honor. I believe it would. I think. How can you read claim 16 that way? Because when you claim 11, maybe you can read it as a means plus function claim. But claim 16, how can you read that as requiring anything inside the wall? Well, I think one thing that has to be done, obviously there's a presumption that it is a means plus function because of the use of the word means. And then I think the court needs to actually look at the specification to determine whether or not. But wait a minute. Before you get the specification, how can you read the language of the claim as requiring more than the wall? It says, whereby such latching system includes that one wall. Well, on the face of the claim, it says one end wall as means. There's no question it says that. I think there's much more to the story than that. You really are relying on the prosecution history to turn it into a means plus function claim, aren't you? Not entirely, no. I understand the word means. But if you had something that said a pen as means for writing, you would never suggest that that language would be means plus function language. It's a description of a pen. It happens to comment that this is the function performed by the pen, right? I would agree with you there. And that's because I think a very commonly understood meaning of the pen is to write. I don't think that inherently in the term end wall, that will perform the function that's stated there. So that you do have to determine whether or not that structure that's stated will, and then this goes back to the safe products case, will entirely perform the function that's stated. You can't necessarily determine whether or not it performs that function entirely as stated unless you go to the spec. Let's assume hypothetically that Judge Bryce is correct, that ordinarily you couldn't read this language as requiring anything more than the one end wall. In other words, ordinarily this would be read as a structured claim. Let's just assume that hypothetically. Where is it in the prosecution history that the applicant said that this claim means something different? He never specifically said that it means something different, I don't believe. What happened was original claim 16 that was provisionally allowed back in July of 1990 did not include the word end wall as. It just said means to provide lateral spreading. Throughout the course of the prosecution, they tried and tried and tried to get language approved that said nothing more than end wall. And they did actually have end wall with ribs and all the structure except the means language. So if the standard is clear and unmistakable disclaimer, there isn't one here. I believe there is and what there is certainly is an attempt to recapture very clearly rejected language. Well, that seems to be a different question. But there isn't by the applicant here a clear and unmistakable disclaimer of a claim limited to the end wall. I believe the statement that they rely upon that was made when the claim was ultimately allowed. But try to answer my question. Is there a clear and unmistakable disclaimer of a broader end wall claim, this construction of the language in the prosecution history? Is there a clear and unmistakable disclaimer? The statement that relates to it, Your Honor, that I would say is a clear and unmistakable disclaimer is the statement when they ultimately went to the examiner and said provisionally allowed original claim 16. We are putting it back before the court, back before the PTO now in independent form. Well, this is the comment that's made at A897. The middle paragraph, the second paragraph there in A897. Yes, Your Honor. I read over that with, I hope, with care. And what struck me is that what was going on here is that the prosecuting attorney was resisting over and over again being pushed into adopting a means of force function type claiming. And the examiner was sort of pushing him in that direction. And he ended up with language which was not really, certainly not classic means plus function language, but which was good enough to satisfy the examiner. And he said something about that that didn't, as I read it, commit himself unequivocally and certainly not with clarity to a means plus function type structure. If that's the case, then it's kind of a tennis match between the examiner and the prosecuting attorney. And the prosecuting attorney perhaps got the better of the examiner. That's a long way from a clear and unequivocal disclaimer of claim subject matter, isn't it? It isn't as clear as I would prefer. I can certainly say that. Well, no, of course not. He says he's representing Claim 16. And I view it as much as anything, frankly, as a reminder that a year ago he provisionally approved Claim 16. They never came back to Claim 16 even though it was provisionally allowed. They kept trying all these other iterations that all included the end wall and the overlapping ribs and nothing more. The examiner at least five times said that there's nothing new to this end wall with the overlapping ribs. He made a pretty good argument that the examiner made a mistake here and that the applicant put one over on it and that he should have been rejected this new language. You make a pretty good argument for that. But that's not the same thing as saying that the applicant agreed to limit the language. I do believe that that was the intent, was that the applicant intended to limit the language. In terms of the examiner's intent to not allow that language, I think one of the – one piece of prosecution history that's very determinative of that is when he actually allowed Claim 41, which is allowed exhibit – allowed Claim 11, in that claim – in that office action where he allowed it, he said Claim 11 now that you've done the means plus function language is now in order for acceptance. In that same office action, they were trying to get Claim 38 allowed, which ultimately was modified in such a way to become Claim 16. That claim that was denied in that office action when he allowed Claim 11 included the language that was limited to nothing more than the chamber having the overlapping end wall plus the ribs, exactly how they're trying to construe it right now. The examiner specifically told him, no, that's nothing new here. There's absolutely nothing new. I allowed your Claim 11. It's got the means plus function language. He didn't specifically say I allowed it because of that. But I'm not allowing Claim – whatever number it was at that point – 38 because there's nothing new here. There's no structure in here stated that isn't present in Bailey and Gorman. What – I can change – what about this suggestion in your brief of mootness? Is it the case that you – your client is no longer selling the old chambers? Yeah. You state in the brief that they're no longer making it, but that seemed to me to be not necessarily the subject of the question. They actually weren't making it, weren't selling it long before the hearing of the preliminary injunction, and all the evidence supported that. They actually had – as a practical matter, the reason why we're all here, it's about the new chambers, the new chambers that don't have this integral end wall, don't have the flanges, don't have the lugs, don't have the notches, don't have a lot of the things that even the – what they acknowledge were the accused old chambers had, frankly put it further yet away from infringement. But that's their concern, and that's really why this lawsuit was filed was – frankly, the lawsuit was filed right about when the old chambers stopped being manufactured and stopped being sold. Well, why did you argue then in response to the summary judgment motion – I mean in response to the preliminary injunction motion that there wasn't any controversy here, it's a continuing infringement? We did, but the reality was that everybody had spent a lot of money in the litigation, had gone a long way, had spent a lot of time, and we knew that if there wasn't a decision made on the – on these claims 11 and 16, what had been occurring that actually caused this lawsuit to begin with would continue to occur with respect to the new chambers. So the record showed – the record of the preliminary injunction showed that you were no longer making or selling the old products? The record absolutely shows that they were no longer making the products and that they were – that they had a few pieces in inventory that they were going to dispose of one way or the other. And those are no longer in existence being sold in inventory or – I mean – Why is this appeal dismissible as concerning a non-justiciable matter for one of a proper case of controversy with respect to the only thing before us, a ruling denying a preliminary injunction because there's nothing to enjoy? There is dispute as to whether or not there's something to enjoy, Your Honor. We did make the case that this did apply to the new chambers. We absolutely have – You're arguing it a lot. That's the irony. That's the irony. But our lawsuit was a DJ action because their marketing methodology is based on claiming that we infringed their patent. But the question for our present purposes, in particular this deal, which is an appeal from a preliminary injunction, it's like both parties wish it were and want to characterize it as an appeal from a grant, a summary judgment, not infringement. The question is, is there a live controversy with respect to those products that were the subject of the request for preliminary injunctive relief? And I take it that the products that were the subject of the request for preliminary injunctive relief are only the old chambers. Correct or not? They would say yes. We would say no. You mean you think that the preliminary – even the preliminary injunction set aside the – you say that they are requesting and requested originally relief. Injunctive relief would affect everyone. They did not. No. Just going back to the hearing itself that did occur, it actually was a hearing on cross motions for preliminary injunction. Both sides had filed them and actually was consolidated. What were you seeking to enjoin? That's why the lawsuit was filed to begin with, to prevent them from making further statements of infringement. Oh, okay. All right. Which is their marketing campaign. Their marketing campaign is basically these guys infringed. Fair competition claim. They're the only two parties basically in this specific type of product line. So yes, in essence, that was what was causing it, that they were trying to do damage to my client based on always saying there's infringement. But that's not before the statements about alleged infringement. That's not before us because we have no ruling taken on your cross motion for preliminary injunction. That's right, Your Honor. So the only thing before us is his motion for preliminary injunction to stop infringement, which now seems to be impossible because there seems that there's nothing to sell. There may still be something to sell, Your Honor. At the time, I frankly don't know if there's anything left. I don't want to represent to the court that there is or isn't. I don't believe there is. Have you guys ever thought of settling for change? Believe me, Your Honor, we have thought of settling this case, and we've tried to settle this case. Anything further? The only other question just with regard to whether or not it's a means plus function claim to begin with is that this is the first time that that issue has even ever been raised was in their reply brief. It had been agreed upon throughout the entire process that this is a means plus function claim. They never went to the second step. What do you mean, 11 or 16? Both. Both. And if you'll even look at their original brief here, they do say in a footnote at some point that they're not even sure if it is means plus function. That's the only time it was ever raised. They raised it in their reply brief. We never addressed it. It had never been addressed throughout this entire process. I don't think it's proper to raise that at this point. All right. Thank you, Mr. Wright. Mr. McNamara, two minutes to rebut. With regard to that last point, our claim construction argument to the district court and to here has been very consistent in the methodology of getting there. We've suggested there might be different ways, whether or not it's means plus function or not a means plus function applicable to claim 11 or claim 16 or both. Nevertheless, you get to the same point in our view. As to the question of this jurisdiction and stopping selling, I don't know what to tell you. At the time this motion was filed, they were selling the product. At the time of the hearing, they said they were still selling the product. Now, apparently, that's no longer the case, which is not surprising after two and a half years. Was the preliminary injunction filed with a request to enjoin both the old and the new product or only the old? Only the old product. And that was clear on the face of the request? I believe so. At the time that D.J. was filed, at the time the counterclaims were filed, at the time the preliminary injunction motion was filed, we were only aware of the old product. The new product had not come to the market yet. Well, in any event, on this appeal, you're not asking us to send it back and consider a preliminary injunction on the new product? No, that's not an issue here. I don't know that there's an irreparable injury issue even at this point. I don't know how to address that. But it seems to me that there was an infringing product, and we've had discussions, and they have declined to agree not to sell this product again. So we proceed as if they are continuing to sell the product. All right. I thank both counsel. We'll take the case under advice. Thank you.